NELSON (SHUFFLETON v.). See Case No. 12,822.

## Case No. 10,115.

NELSON et al. v. The THOMAS SPARKS. DENNY v. SAME. CHAMBERLAIN v. SAME.

[18 How. Prac. 20.]

Circuit Court, S. D. New York. Sept., 1859.

COLLISION—STEAM AND TOW.

Where it appeared that the master of a propeller in attempting to pass on the larboard side of a tow-boat, with barges attached, after the tow had taken a sheer to the larboard on the conjecture that the tow would break her sheer in time to allow of sufficient room in the channel for the propeller to pass on that side, and a collision ensued, by which the outside barge on the larboard side was sunk: Held, that before the master of the propeller could rightfully or prudently act upon such conjecture, if he desired to persist in the course he had adopted in passing the tow, he should have stopped his vessel until he had ascertained the result of the sheer.

[Appeal from the district court of the United States for the Southern district of New York.

[These were separate libels by Edward D. Nelson and others, Henry Denny and Enoch Chamberlain, against the propeller Thomas Sparks, to recover damages sustained by the Eagle in a collision between the two vessels. From a decree of the district court in favor of libellants (case unreported), respondent appeals.]

Stoughton & Leveridge, for appellant.
Van Santvoord & Nelson, for libellants.

NELSON, Circuit Justice. The libels were filed in these cases by the owners of the barge Eagle and the owners of her cargo, against the Thomas Sparks, to recover damages for a collision occurring between the two vessels in the Raritan river, New Jersey, on the 22d of August, 1854. The Eagle was in tow of the New Boston, which was descending the river against the tide, with four barges or boats on each side of her, two abreast, and each having another towed astern. The Eagle was the forward outside barge on the larboard side, and was fastened by a hawser at her stem and stern to the barge next inside of her. The Thomas Sparks was descending the river astern of the New Boston and her tow, and in attempting to pass her on the larboard side, struck the Eagle and sunk her. The channel was some two hundred and fifty feet wide at the place of collision, and both vessels were approaching a very abrupt turn in the river towards the north; that is, towards the left in descending. There were mud-flats on each side of the channel. As the New Boston was

approaching this turn, being in about the middle of the channel, she suddenly took a lurch or sheer toward the left or larboard side, without having changed her helm, but from the effect of the head-tide acting upon the tow, which brought her obliquely across the channel, and brought the Eagle, she being the outside barge, and heavily laden, somewhat upon the flats, the draft upon which had the effect to produce a strain on her hawser at the bow, and broke the bolt of the cleet with which it was fastened to the inside boat; and from the advance of the tug swung the head of the Eagle thus broken loose, round at right angles to the line of the other boats, and thus closed up the passage on the larboard side; and in this position she was struck by the Thomas Sparks, while in the act of attempting to pass on that side of the channel. No fault is attributable to the New Boston, or to any of the barges or boats in her tow. And the only question in the case is whether the collision occurred without any fault on the part of the Thomas Sparks. The defence set up by the master is, that if the Eagle had not broken loose from her connection with the tow, and swung across the channel, the collision would not have occurred, as there was room enough for his vessel to pass clear of the tow; and that, when the accident happened to the Eagle, his vessel was so near that no manoeuvre or movement could prevent the blow.

The master was a witness for the respondent. He states that his vessel was about a quarter of a mile astern of the tow, when he made up his mind to pass it on the larboard. As he neared it, the tow sheered across the river toward the larboard side, rather out of the channel. "I calculated," he observes, "it would break the sheer, and still give us room to go on the larboard side. The tow came quartering to the larboard. We had not commenced turning the bend in the river. As we neared the tow, I saw it kept its sheer, and I then slowed my boat, and finally stopped her, and the other boat continued under way. As we stopped our boat, I let her go along until our bow lapped on to the stern of the tow, and I then discovered that the barge was swung out, and I rang to go back, and we backed her." At another place in his testimony the master states that the reason he did not go to the starboard was because he thought the tow would break her sheer, and he thought she would break it because he thought it would keep the channel. _ No witness on the part of the respondent varies this account of the collision as given by the master.

We are satisfied, upon a very careful examination of the evidence, and especially of that of the master, that if, when he discovered the sheer of the New Boston, he had ported his helm his vessel could have passed the tow on the starboard side without any difficulty; and that it was his persistence in his first determination to pass to the larboard, after the sheer, that occasioned the disaster. There was abundance of room in the channel to have passed to the starboard. But assuming that the Thomas Sparks was too near to have made this manoeuvre at the time of the sheer, then it was the duty of the master to have immediately stopped and backed his boat. Instead of doing so, he admits, as he stopped, he let her go along until his bow lapped on the stern of the tow, before he rung the bell to back her. The excuse given for persisting in passing to the larboard, after the sheer of the New Boston, is that he thought she would break it. But before he could rightfully or prudently act upon this conjecture, if he desired to persist in the course he had adopted in passing the tow, he should have stopped his vessel until he had ascertained the result of the sheer.

Without pursuing the examination of the case further, we are satisfied the decrees of the court below was right, and should be affirmed.